## Brittain *vs.* Duling.

ERROR TO THE KNOX CIRCUIT.

1. Notes given for money and goods advanced for gaming cannot be enforced.
2. D. lost his horse at gaming, and gave his note for the value of the horse, and took him into possession. Held—that the note was not on good consideration, and not enforcible.

The facts are stated in the opinion of the Court.

*John M. Harlan,* for Brittain—

1. There is not sufficient evidence in the record showing that the note for $30, and the notes executed in December, 1849, were for money or goods furnished Duling by Brittain with which to gamble.

2. As to the $100 note : Charles Newbee won a mare from Duling at cards. Duling, in order to get it back, offered Newbee his note for sixty dollars. Newbee refused to take it, and expressed his willingness to take the note of Brittain. Duling saw Brittain, and persuaded him to give Newbee his note for the amount. Brittain did so ; and to indemnify himself, took Duling's note for $100. By this arrangement, Duling got his mare again. Brittain was not present at any time during the game between Newbee and Duling, nor was he interested to any extent in its result. Under this state of the case, Duling is liable to Brittain for the amount, at least, which he assumed to pay Newbee for him.

The court is referred to the case of *English vs. Young,* 10 *B. Monroe,* 141, and *Greathouse vs. Throckmorton,* 7 *J. J. Marshall,* 16. In the former case, a loser at cards gave to the winner an order upon a merchant for merchandize. The merchant *knew* that the merchandize was in discharge of a gambling debt. The court, however, say, that though there was no binding consideration between the winner and loser, yet there was between the loser and merchant. "We

find nothing (says Chief Justice Marshall) in the statute or adjudicated cases, which establishes the principle that if a *third person, who had no participation in the gaming, afterwards pays the winner at the request of the loser, either with or without the knowledge of the consideration moving the request,* he is precluded from recovering against the loser what he has paid." "In such case, *where the gaming has already taken place, knowledge of the fact does not implicate third persons, as* it *would in cases of money loaned for the purpose of gaming.*"

Brittain is not *particeps criminis.* He is placed in his present attitude not by any fault of his, but by the conduct of Duling, who importuned him to go (in effect) his surety. A court of equity could not, under the circumstances, lend its aid to Duling without making not only an unwarrantable extension, but an unjust and impolitic perversion of the statutes against gaming.

3. The evidence is not sufficient to establish that any of the remaining notes referred to in the record were for goods furnished by Brittain to Duling with which to gamble.

A reversal is respectfully asked.

*Dunlap, Ensworth & Rice,* for appellee—

The note of $100 was given to secure the payment of a debt based upon a gaming consideration, and is not enforcible. Though the gaming may have taken place in Virginia, yet the effort is to enforce the contract and collect the demand in Kentucky, and to subject real estate in Kentucky; to do so, the contract must be such as the courts of Kentucky will enforce. This is not of that character. (*Breckinridge vs. Moore,* 3 *B. Monroe,* 367–8; *Story's Conflict of Laws,* 301–2, *chapter* 10, 358 *to* 391.) And this doctrine applies as well to mortgages as to deeds. (1 *Paige's N. Y. Rep.* 220.)

The contract is void by the law of Kentucky, and cannot be here enforced. (*Story's Conflict of Laws,* 303–4.)

The note was given to secure Brittain in the note of $60, given to Newbee for the mare which Newby had won from Duling, all which was known to Brittain. And the whole object of Newbee and Brittain was to prevent Duling from defending the suit upon the note given for the mare won of him.

Another view of the case is equally conclusive against the right of Brittain to recover on the $100 note. Brittain gave his note to Newbee for $60, and Newbee thereupon gave back the mare which he had won of Duling. Duling was to pay that note, but if he failed to do so, Brittain was to pay it to Newbee, and in that event Duling was to pay Brittain the $100 note which was at the same time given to Brittain. Now, there is no proof in the record that Brittain ever did pay Newbee the $60 note which the proof shows was the condition on which Duling was to pay the $100. The precedent condition has not occurred.

We ask an affirmance of the decree.

December 18.

Judge SIMPSON delivered the opinion of the Court.

1. Notes given for money and goods advanced for gaming cannot be enforced.

We deem the evidence sufficient to establish the fact, that all the notes held by the plaintiff on the defendant, except the notes for $100 and for $3 25, were executed by the latter for goods sold to him by the former, whilst he was engaged in gaming, and which were advanced to him by the plaintiff for that express purpose. Consequently their payment cannot be enforced, as they come directly within the prohibition of the statute.

A man by the name of Newbee won from the defendant his horse, and obtained the possession of it from him. The winner agreed to sell the same horse to the defendant at the price of sixty dollars. The plaintiff was present at the time of this negotiation, and had full knowledge of the whole transaction. It was finally arranged among the parties that the plaintiff should execute his note to the winner for sixty dollars as the price of the horse, and the defendant should execute his note to the plaintiff for one hun-

dred dollars, which was to be void provided he paid to the winner the note for sixty dollars, executed by the plaintiff. The notes were executed according to this arrangement, and the horse was re-delivered to the defendant.

The note for sixty dollars has not been paid, either by the plaintiff or the defendant. The only question then is, can the plaintiff enforce the payment of any part of the note for $100. The determination of this question depends upon the liability of the plaintiff for the note of sixty dollars, executed by him to Newbee. If he be legally liable for the payment of it, he may have a right to compel the defendant to pay to him an equal amount of the note for one hundred dollars, as it was executed expressly for his indemnity.

These notes were executed before the Revised Statutes took effect, and their validity must be decided by the previous law.

By the act of 1833, (2 *Statute Law*, 758,) it was enacted, that if any person should win and receive any money, goods, lands or other thing of value whatever, the person losing might, at any time within five years after the payment of the property or thing so lost, sue for and recover the same, in any court having jurisdiction in like cases. The statute secured to the loser the exclusive right to sue for the property for six months next after it had been lost by him.

These notes were executed on the day the gaming occurred, or on the following day, and the horse which constituted the consideration upon which they were based, then actually belonged to the defendant. His right to it had not been divested, nor had the winner acquired any right or title therein. The sale of the horse by the winner to the loser, formed the whole consideration for the note of sixty dollars. executed by the plaintiff. This note, inasmuch as the winner had no right to the horse, which in law belonged to the purchaser, was executed without any good or valuable consideration, and its payment cannot be le-

<div style="margin">
BRITTAIN
*vs.*
DULING.

2. D. lost his horse at gaming, and gave his note for the value of the horse, and took him into possession. Held—that the note was not on good consideration, and not enforcible.
</div>

gally enforced. If the loser had not acquired the possession of his property under the arrangement mentioned, he could have sued the winner, and recovered it by law; so that, in fact, the latter lost nothing by the surrender of the horse to the former. It follows, therefore, that the plaintiff, not being legally liable for the note of sixty dollars, has no right to compel the defendant to pay any part of the note for one hundred.

Wherefore the decree is affirmed.